**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL PENSION FUND,** | ) | |
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL WELFARE FUND,** | ) | |
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL RETIREE HEALTH** | ) | |
| **AND WELFARE FUND, and CATHERINE** | ) | |
| **WENSKUS, not individually but as** | ) | |
| **Administrator of the Funds,** | ) | |
| | ) | |
| | ) | **Case No.** 25-cv-3787 |
| **Plaintiff,** | ) | |
| **and** | ) | |
| | ) | |
| | ) | |
| **RITEWAY-HUGGINS CONSTR., INC.,** | ) | |
| **an Illinois Corporation and LARRY HUGGINS,** | ) | |
| **individually** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund and Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds ("Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska and Sara S. Schumann for their Complaint against Riteway-Huggins Constr., Inc ("Company") and Larry Huggins ("Huggins"), individually:

**FACTS COMMON TO ALL COUNTS**

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Chicago Laborers' Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA.  29 U.S.C. §1002(3) and 37(A).  They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus is the Administrator of the Laborers' Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Laborers' Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a fiduciary of the Laborers' Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Riteway-Huggins Constr., Inc. (hereinafter "Company") is an Illinois corporation that did and does conduct business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.      Defendant Larry Huggins ("Huggins") is or was an officer and shareholder of the Company.

2

7.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union operates and maintains its office within the District.  The Union and Company are parties to a collective bargaining agreements, the most recent of which carried terms  of  June 1, 2017 to May 31, 2021 and June 1, 2021 to May 31, 2026. ("Agreement").  (A copy of the "short form" Agreement entered into between the Union and Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company to the Laborers' Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

8.     The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

9.     The Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which

Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

10. The Pension, Welfare and Retiree Health and Welfare Declaration of Trust Agreement documents provide Trustees with the powers to formulate, establish and maintain collection procedures for collection of contributions and those actions, procedures and polices shall be binding upon all Contributing Employers.

11. The Funds' Amended and Restated Collection Policies and Procedures provides that in the event the Funds files suit against a Contributing Employer, any liquidated damages incurred by the Contributing Employer after the lawsuit is filed will be assessed liquidated damages at twenty percent (20%) of the contributions owed. This Collection Policy was adopted by the respective Trustees for the Pension, Welfare and Retiree Health and Welfare Funds.

12. The CBA provides that in the event the Trustees refer an account to legal counsel for collection of delinquent fringe benefit contributions revealed as due through an audit, the delinquent employer shall be liable for reasonable attorneys, audit costs, interest and filing costs incurred in the collection process.

13. The Funds' Collection Policy provides any delinquent contributions owed by a Contributing Employer shall bear interest in the amount of twelve percent (12%) per annum, compounded from the due date until the obligation is fully satisfied.

14. In addition to fringe benefit reports, the CBA obligates the Company to submit and pay Dues Reports. The Company is required to deduct from the wages of employees

covered by said contract working dues in the amount of three and three-quarter percent (3.75%) of gross wages and shall remit monthly to the Union office the sums so deducted.

15.     The CBA also requires the Company to pay contributions to the Industry Funds. These contributions are paid as part of the Dues Reports.   The CBA requires the Company to pay eight cents ($.08) for each hour worked by employees covered by the CBA to the Chicago Area Independent Construction Association ("CAICA"), seven cents ($.07) for each hour to the Chicago-Area Laborers-Employers Cooperation and Educational Trust ("LECET") and seventeen cents ($.17) per hour to the Laborers' District Council Laborer Management Cooperation Committee ("LMCC").  The total Industry Fund contribution is thirty-two cents ($.32) per hour.

16.     Dues Reports and contributions are due by the 10th day following the month in which the work was performed.  Dues Reports and contributions which are not submitted in a timely fashion are assessed liquidated damages at ten percent (10%) of the union dues report amount.

17.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

**COUNT I**

**(Failure To Timely Pay Union Dues to Laborers' Funds)**

18.     The Funds re-allege and incorporate the allegations contained in paragraphs 1-17 of this Complaint.

19.     Notwithstanding the obligations imposed by the Agreement, the Company failed to submit and pay its monthly union dues contributions for July 2024 through October 2024, the amount of those reports being unknown.

20.     Pursuant to the Agreement, the Company is liable to the Laborers' Funds for liquidated damages which are assessed against the unpaid July 2024 through October 2024 reports at ten percent (10%) of the unpaid report amount plus reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court seems appropriate.

WHEREFORE, Plaintiffs Laborers' Funds respectfully request that this Court enter judgment in sum certain in favor of the Plaintiff Funds against Defendant Riteway-Huggins Constr., Inc in the amount disclosed on the Company's July 2024 through October 2024 dues contribution reports, plus ten percent (10%) liquidate damages and any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Breach of Installment Note – Riteway-Huggins Constr., Inc)

21.     On February 18, 2025, the Company entered into a twenty-four (24) month Installment Note ("Note") to pay past due contributions, liquidated damages, interest for unpaid fringe benefit contributions for the months July 2024 through October 2024 and all audit findings of the Company's books and records for the period April 1, 2021 through June 30, 2024.  A true and accurate copy of the Installment Note is attached as Exhibit B.

22.     The Note amount was $158,562.55 plus twelve percent (12%) interest.  The Company agreed to make a $41,543.52 by February 15, 2025 and beginning on March 15, 2025,

and continuing on the 15th of each subsequent month, the Company agreed to make monthly payments of $4,818.36.

24.     The Note also required the Company to post a $10,000.00 surety bond within thirty (30) days of executing the Note.

25.     During the term of the Note the Company experienced four events of default under the terms of the Note:  1) failed to pay its down payment of $41,543.52; 2) failed to remit its March 15, 2025 note payments; 3) failed to remit and pay monthly dues reports and liquidated damages for July 2024 through October 2024; and 4) failed to post the $10,000.00 fringe benefit surety bond.  Note, the Company paid $5,000.00 toward the down payment.

24.     Paragraph  3 of the Installment Note provides:

In the event the Company fails to timely remit an installment payment or fails to remain current on all future fringe benefit and union dues contribution obligations which become due during the period of time in which the installment amounts remain due and owing, the Funds shall issue a written notice of default via email to Larry Huggins (Larry.Huggins@riteeway-huggins.com).   If the Company fails to cure the default within ten (10) business days of the default notice, the unpaid balance in the installment note shall become immediately due and payable.   The Funds shall be entitled to reasonable attorneys' fees and costs incurred in collecting all defaulted amounts.

26.     On March 24, 2025, the Funds provided a written notice of default to the Company (Larry Huggins) which set forth the reason for the default and further requested that a Company representative contact Fund Counsel and make arrangements to cure the default.   As of the date of this Complaint, the Company failed to remit the balance due on the down payment ($36,543.52), its March 2025 note payment ($4,818.36), the July 2024 through October 2024 dues contributions, and post the $10,000.00 surety bond.   As a result, and in accordance with Paragraph 3 of the Note, the Funds are declaring the balance of the Note immediately due and payable.

27.     After allowing for all just due credits, the accelerate balance due on the Note is $153,562.55

WHEREFORE, the Funds respectfully request that this Court find in default of its Installment Note and enter judgment favor of the Funds and against Defendant Riteway-Huggins Constr., Inc in the amount of $153,562.55 plus reasonable attorneys' fees and costs and any other relief deemed just inequitable.

## COUNT III

### (Breach of Personal Guaranty Against Huggins)

28.     On February 18, 2025, the Company entered into a twenty-four (24) month Installment Note ("Note") to pay past due contributions, liquidated damages, interest for unpaid fringe benefit contributions for the months July 2024 through October 2024 and all audit findings of the Company's books and records for the period April 1, 2021 through June 30, 2024.  A true and accurate copy of the Installment Note is attached as Exhibit B.

29.     The Note amount was $158,562.55 plus twelve percent (12%) interest.  The Company agreed to make a $41,543.52 by February 15, 2025 and beginning on March 15, 2025, and continuing on the 15th of each subsequent month, the Company agreed to make monthly payments of $4,818.36.

30.     Contemporaneously with the signing of the Note, on February 18, 2025, Huggins entered into a Guaranty of Payment Indemnification ("Guaranty") personally guaranteeing:  1) the amounts due on the Note; 2)  benefit contributions and dues that are due at the time the Note was entered into; and 3)  Company benefit contributions and dues that became due while obligations under the Note remain unsatisfied.

31.     In addition, Huggins guaranteed payment of interest, liquidated damages, accumulative liquidated damages, audit costs and attorneys' fees and costs resulting from the Company's failure to timely remit contributions and dues reports and payments during the term of the Note.  A true and accurate copy of the Guaranty is attached hereto as Exhibit C.

32.     Paragraph 6 of the Guaranty provides as follows:  "In the event that payments under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds."  The Guaranty also provides at paragraph 13:  "The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) business days' notice after default of any payment due under this Guaranty, and to confess judgment against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid thereon . . . .  including reasonable attorney fees."

33.     On March 24, 2025, the Funds provided a written notice of default to the Company and Huggins which set forth the reason for the default and further requested that a Company representative contact Fund Counsel to make arrangements to cure the default. As of the date of this Complaint, the Company failed to remit the balance due on the down payment ($36,543.52), its March 2025 note payment ($4,818.36), the July 2024 through October 2024 dues contributions, and post the $10,000.00 surety bond.

34.     After allowing for all just due credits, the accelerate balance due on the Note is $153,562.55

35.     Huggins' failure to honor his obligations under the Guaranty deprived the Funds of contributions, income and information needed to administer the various Funds and jeopardized

and wrongfully withheld payments for the pension, health and welfare benefits of the participants and beneficiaries.

36. Allowing for all just due credits, the damages incurred as a result of Huggins' Guaranty breach total $153,562.55 plus reasonable attorneys' fees and costs.

WHEREFORE, the Plaintiff Chicago & Vicinity Laborers' District Council Funds pray this Honorable Court enter judgment in its favor and against Defendant Larry Huggins, individually, in the amount of $153,562.55 plus reasonable attorneys' fees and costs and for any other relief deemed just and equitable.

## COUNT III

### (Breach of Installment Agreement- Failure to Post Bond)

37. The Funds re-allege and incorporate the allegations contained in paragraphs 1-27 of this Complaint.

38. Paragraph 6 of the Note provides that the "[c]ompany further agrees to obtain and maintain a $10,000.00 surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA. The Company shall post the surety bond or execute a contract for cash bond within thirty (30) days of executing this Note."

39. Notwithstanding its obligation to do so the Company failed to post the required $10,000.00 bond.

40. Failure to post the $10,000.00 bond constitutes a breach of the Note, and places the Funds, Union and its members at risk that the obligation owed by the Company will be met in a timely fashion because the security required by the Agreement is not available.

WHEREFORE, Laborers' Funds respectfully request that this Court:

a.  enter judgment against Defendant Riteway-Huggins Constr., Inc. in the amount of $10,000.00 which shall be used by the Funds as a cash bond or in the alternative, order Defendant Riteway-Huggins Constr., Inc to immediately post a $10,000.00 surety bond; and

b.  granting any other relief deemed just and equitable.

April 8, 2025

          Respectfully submitted,

          By: /s/ G. Ryan Liska

G. Ryan Liska
Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540



# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **Riteway - Huggins Construction Inc.** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017; $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL, to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior remittances to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its business, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures

Dated **February 7** 20 **20**

ACCEPTED:

Laborers' Local Union No **4**

By _(signature)_

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By _(signature)_
James P. Connolly, Business Manager

By _(signature)_
Charles LoVerde, Secretary-Treasurer

For Office Use Only:

**Riteway - Huggins Construction Inc.**

FEIN No : _(redacted)_

By **LARRY HUGGINS**
(Print Name and Title)

_(signature)_
(Signature)

**1030 E _____ ST**
(Address)

**Chgo IL 60617**
(City, State and Zip Code)

**773 734-1600**
(Telephone/Fax)

**larry.huggins@riteway-huggins.c**
(Email Address)

EXHIBIT
**A**

Effective June 1, 2017    WHITE - LOCAL UNION  •  CANARY - TRUST FUND  •  PINK - DISTRICT COUNCIL  •  GOLD - EMPLOYER

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Chicago & Vicinity Laborers' District Council Pension Fund ("Pension Fund"), the Chicago & Vicinity Laborers' District Council Welfare Fund ("Welfare Fund"), and the Chicago Laborers' District Council Retiree Health and Welfare Fund ("Retiree Welfare Fund" or collectively with the Pension and Welfare Funds as the "Funds"), the parties of the first part, and Riteway-Huggins Constr., Inc. (hereinafter "Company"), the party of the second part.

**WHEREAS**, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with The Construction and General Laborers' District Council of Chicago and Vicinity ("District Council"), where under it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund and other related ancillary funds, on behalf of its covered employees, and to submit payment of all employee union dues;

**WHEREAS**, the Company has agreed to pay certain fringe benefit and union dues contributions, ancillary funds, liquidated damages and interest owed to the Funds as disclosed on the Company's fringe benefit contribution reports for the months July 2024 through October 2024 and all audit findings of the Company's books and records for the period April 1, 2021 through June 30, 2024. The total liability for the aforementioned is $158,562.55.

**WHEREAS**, the Company desires to pay all delinquencies owed to the Funds, together with liquidated damages, and interest, as set forth below, and further desires to remain current in its obligation to pay contributions to the Funds.

**THE PARTIES HEREBY AGREE** as follows:

1. The Company will pay a total of One Hundred Fifty-Eight Thousand Five Hundred Sixty-Two and 55/100 Dollars ($158,562.55) plus twelve percent (12%) interest on the financed balance of the debt. The Company will make an immediate down payment of $41,543.52 by February 1, 2025. The remaining balance of $117,019.03 plus twelve percent (12%) interest will be financed over the course of the following twenty-four (24) months. The first twenty-three (23) monthly Note payments are in the amount of $4,818.36 and the twenty-fourth (24th) and final note payment is in the amount of $4,818.36. The first monthly Note payment is due on March 15, 2025 and the payments continue to be due on the 15th of the following twenty-three consecutive months to February 15, 2027. In the event the 15th day of the month falls on a weekend or federal holiday the Note payment shall be due on the next business day.

2. All payments under the terms of the Note shall be made payable to "Laborers' Pension and Welfare Funds" and hand delivered or mailed to the attention of Michael Christopher at the Funds' Westchester office, 11465 Cermak Road, Westchester, IL 60154-5768.

3. In the event the Company fails to timely remit a Note installment payment or fails to remain current on all future fringe benefit and union dues contribution obligations which become due during the period of time in which the installment amounts remain due and owing,



the Funds shall issue a written notice of default via email to Larry Huggins (Larry.Huggins@riteway-huggins.com)   If the Company fails to cure the default within ten (10) business days of the default notice, the unpaid balance in the installment note shall become immediately due and payable.  Further, in the event the Company fails to cure the default, the Company shall provide the Funds with a listing of all current projects, including the name and address of the project and the name of the project general contractor and owner/public body.  The Funds shall be entitled to reasonable attorneys' fees and costs incurred in collecting all defaulted amounts.

4.      This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust.  In the event that the Company fails to maintain its obligations under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was  performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

5.      The Parties acknowledge and agree that any payments to the Union provided for in this Installment Note fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement, or release of a claim, complaint, grievance, or dispute in the absence of fraud or duress.

6.      The Company further agrees to obtain and maintain a $10,000.00 surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.  The Company shall post the surety bond or execute a contract for cash bond within thirty (30) days of executing this Note.

7.      The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any pre-calculated Note interest that has not accrued as of the date full payment has been made.

# [SIGNATURE PAGE TO FOLLOW]

The Parties hereby agree to these terms by their execution hereof on the _18_ day of _February_, 2025

Riteway-Huggins Constr., Inc

By: _(signature)_

Larry Huggins, Company Owner

Date: 2-18-25

Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund and Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund.

By: _(signature)_

Catherine Wenskus, Administrator

Date: 2/18/2025

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of _February 18_, 2025, by the undersigned, LARRY HUGGINS (the "Guarantor"), to and for the benefit of the **CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND AND CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, AND CATHERINE WENSKUS, ADMINISTRATOR OF THE FUNDS AND THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY** (the "District Council") and any related ancillary Funds to which **RITEWAY-HUGGINS CONSTR., INC** is obligated to pay contributions to by virtue of its Agreement with the District Council and the Funds' respective Agreements and Declarations of Trust (collectively the "Funds").

**WHEREAS,** Riteway-Huggins Constr., Inc. ("Company") has agreed to pay a total of **$158,562.55** plus 12% applicable Installment Note interest over the course of TWENTY-FOUR (24) months to the Funds in settlement of the delinquent contributions monthly fringe benefit contribution reports as revealed as due by the Company's July 2024 through October 2024 monthly reports and all audit findings of the Company's books and records for the period April 1, 2021 through June 30, 2024.

**WHEREAS,** the Funds are unwilling to enter into the Note unless the Guarantor executes this Guaranty: and

**WHEREAS,** the Guarantor has a financial interest in the Company and will be benefited by the Note:

**NOW WHEREAS,** in consideration of the foregoing, the Guarantor agrees as follows:

1. **Guaranty of Payment and Indemnification.** The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all benefit contributions, union dues and/or wages owed by the Company (including single employers, alter egos or successors if determined by a court) to the Funds and the District Council and/or, the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs and including any amount revealed as due and owing in an audit even if the audit is conducted after the Note is paid in full.

2. **Continuing Guaranty.** This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. **Waivers.** Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall

1



remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. Subrogation. Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. Independent Obligations. The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. Acceleration. In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated and the Guarantor shall be provided with written notice of the default in Note or back due wage payments. Written notice shall comply with the terms stated in Paragraph 13 and 15 below.

7. Effect of Bankruptcy. This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. Termination. This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. The Company's Financial Condition. The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. Expenses. The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. Delay, Cumulative Remedies. No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. Binding Effect. This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of

2

the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. Default. The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) business days' notice after default in any payment due under the Settlement Agreement, Note or Guaranty, and confess judgement against Guarantor, after service of written notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. Written notice of the default shall be provided in accordance with Paragraph 15 below.

14. Warranties. Guarantor makes to the Funds the following representations and warranties:

(a) Authorization. Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) No Conflict. The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) Litigation. There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) Enforceability. This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. Notices. All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when: (I) delivered via email; (II) delivered in person, (III) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (IV) when received if sent by private courier service, or (V) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

**In Case of Guarantor**

Larry Huggins, Owner
Riteway-Huggins Constr., Inc.
1030 E. 87th Street
Chicago, Illinois 60619
Larry.Huggins@riteway-huggins.com

**In Case of Funds**

G. Ryan Liska
Laborers' Pension & Welfare Funds
11465 Cermak Road
Westchester, Illinois 60154
rliska@chilpwf.com

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. It is the responsibility of the individuals listed above to provide the others with changes to the contact information provided herein.

16. <u>Additional Waivers.</u> Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and inter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

20. <u>Death of a Guarantor.</u> In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

Larry Huggins, individually

Date: 2-18-25

4